v. Anna L. Mueller, defendant-appellant, arguing for the appellant James K. Levin, arguing for the appellee Leslie Mark. Thank you. Mr. Levin, you may proceed. Thank you, Your Honor. May it please the court, the issue here in this case is whether the evidence that was taken as a result of the blood draws should be suppressed under the Fourth Amendment. What I'd like to do is briefly summarize six points that I've made in my brief. And the first issue, first point has to do with state action. The Fourth Amendment applies to state action, not private conduct. The question here is whether the hospital personnel were acting with the endorsement, support and encouragement in participation of the police. So, the two cases that I rely on for this proposition are the Skinner v. Railway Labor case, that's the 1989 decision. And then the People v. Guild decision, an Illinois appellate court case, which specifically cited Skinner. So, under the state action doctrine, there is state action because the actions of the hospital were done at the endorsement, support, encouragement and participation of the police. The first blood draw was the medical blood draw. How were the police or any state actors involved in that? Well, one of the nurses specifically, Nurse Palin, testified that the Illinois State Police requested the blood test results. So, there was state action involved in that. There are a lot of factors here. There's not just that one factor, but several others. They requested the results of it after it was done, correct? Yes, that's true. But did they instruct them to take that medical blood draw in the beginning? Well, there's circumstantial evidence of that. And then the Skinner case is very instructive on this. Because in the Skinner case, the majority opinion specifically stated that the government regulations had issued didn't actually compel the private railroads to conduct the tests. But the Supreme Court in Skinner held that that was not determinative. The Skinner court applied a totality of the circumstances test. So, the question is whether there was, even though the regulations did not compel the taking of the test, and even though the police did not specifically compel or force the hospital to take the test, there was still a lot of government participation and encouragement under the Skinner test. And specifically with the Skinner case, the Skinner case relied on federal regulations, among one of many factors, which said that after the railroad takes the breath test and urine test, that the railroad would be required to submit the results of that test to the government entity. So, as far as that goes, the facts of this case are quite similar to Skinner. I don't think the fact that the police did not specifically order Palin to do the test, that's not determinative under Skinner. We're dealing with 50141, which they did not have in the Skinner case, correct? 50141, I'm sorry? Right, right, right. That section of the statute, which is integral here, which is what we're looking at. Yes, I'm sorry, 50141. Yeah, they did not have that in Skinner, so this is a little different than Skinner. Well, the statute we have in this case is similar to Skinner, because the common thread running between our statute and the Skinner regulations was that the private entity would be required to disclose the results to the government. In the Skinner case, Skinner v. Railway Labor Executives Association, the Supreme Court found that the federal government was encouraging testing and removed all obstacles, including labor contracts, to testing, correct? Yes, they mentioned that in the opinion, yes. In your brief, you do not cite Wicker v. Wicker, a second district case from this court that the state cites in their brief. Why didn't you cite that case, which appears to be directly on point? Well, I disagree that it's on point. The Wicker case did cite the three out-of-state cases, so I'm familiar with that. In the three out-of-state cases, the state action, they added, I'm sorry? Let me finish my question. I'm sorry. This court said the Fourth Amendment is not triggered by actions of private parties unless they act as agents of the state. Because the three cases that the Wicker case cited in Reliance had to do with a different Fourth Amendment issue. It had to do, there was a Michigan Supreme Court in Pearly and a few other cases, and those cases addressed whether the taking of a blood draw violated reasonable expectation of privacy. Those cases did not have anything to do with state action. Is there anything in this statute that requires or encourages hospitals to test blood? Yes. The totality of the circumstances, because if the hospital is required to disclose the results to the police, and the reason for that under the Quigley case is that these results will be useful to the police in determining whether there's probable cause to arrest for DUI. And I feel that the Skinner case is closely aligned under this case because in Skinner, the regulations at issue did not compel the private entity to take any tests. That's why it's closely aligned with this case. The regulations at issue in Skinner, like this case, involved requiring the private entity to disclose the results of the tests once those tests were administered. In this case, 11501.4 is a little different because it deals with independent tests already done, and it deals with disclosure of those tests. So that wasn't what you had in Skinner, but that's what you have here. 11501.4 talks about the disclosure, and as you say, it says that they shall disclose upon request. But the results might help the state. However, aren't they done for medical purposes? Isn't that the difference here? No, under 4.1, and I rely on the Quigley case, the purpose is to assist the police determining whether to arrest for probable cause. So the very first medical test that's done as an individual comes into the hospital after, for instance, a car accident, the medical personnel are doing that for the assistance of the police in making an arrest? Is that what you're saying? Well, under the particular facts of this case, the defendant did not want to have any medical treatment at all. She did not want to be transported to the hospital. There's a minor injury, yet she was transported. It's not just a statute I'm looking at. But she had some confusion, and they were concerned with possible a head injury. Is that correct? There were some very minor concerns. They didn't even put the ambulance lights on when they transported her. There was very little concern. The injuries were quite minor. In here, the testing, the judge found that the testing by Palin and more particularly by the doctor, they found them credible as to his basis for taking the test, taking the blood, and that it was purely for medical, and there was no state action, if you will, or encouragement. So how do we reverse the trial court's determination of credibility of these two witnesses when they say this was taken purely for medical purposes and there was no state action here? How do we reverse that? I think the standard for you would be against the manifest way to the evidence. How do we discredit the trial judge? Well, the appellate court is able to look at the facts in relation to the case and make a de novo determination based on the ultimate issue, whether suppression should be granted or not. And I would rely on several circumstances here, not just one, but many facts. So I would request an opportunity just to go over those. So first, at page R86, Palin testified that the Illinois State Police requested the blood test results. And at R196-197, we have Dr. Lechika, who testified that blood test was done to determine whether to discharge the defendant into the custody of the police, because it had to be below a certain level. So he was working in conjunction with the police. And then third, Mueller didn't want to go to the hospital. She denied pain. She was ambulatory to be seen. She was not in distress. And you look at the statute, which says that the results of the test have to be disclosed to the law enforcement agency. That's another factor to look at. So under Gill and Skinner, we're looking at not just one item. We're looking at a lot of different items. The Illinois mandatory disclosure requirement says that the results must be disclosed to the police. And then the Quickly case, as I said, indicates that the purpose of this provision is to enable the police the information that they need to make a probable cause determination. So there is, under Skinner, there doesn't have to be a police officer that orders or compels a private person or entity to do the testing. The test is a lot looser. There has to be participation, encouragement, and support. And although the facts of Skinner, because it involves a railway and not blood testing for DUI, of course, the facts are not going to be precisely the same. But the general principles under the Skinner case apply here, as articulated in Gill as well. So Gill cited Skinner. So we have those two cases. Mr. Levin, we've run out of time. A couple more questions. Okay. With respect to the first draw, that was at 8.6 a.m. before the police even arrived, correct? There were a few draws, yes. I apologize, but I don't recall the exact time that that was done. But I defer to the court. And secondly, in Walker, this court said that it did not matter whether or not the defendant was under arrest already when he or she arrives at the hospital for application of 5114, correct? Yes, I understand that to be the case. But the point I would raise here is a different point than whether she was under arrest. As I said, with the state action issue, the real issue is the statute is one of many factors showing why there is state action here because of the involvement, the participation, the encouragement. And there doesn't have to be compulsion by the state or an order by the police, or I should say the police, compulsion by the police or an order by the police. And here the testing was done involuntarily. Consent is an issue that was discussed in the briefs, and there was no voluntary consent under the Anthony and Green cases because she didn't want to go to the hospital in the first place. When Dr. Lachika wanted to test her for her blood level, she protested. And Lachika gave an explanation that he was empowered to make the decision whether to consent to the blood test that he, because of her condition, he was empowered to make the decision for her. And I take issue with that. I mean, we don't, that's what he testified to. So that's what we're relying on here. And that shows a lack of voluntary consent because Dr. Lachika basically made the decision whether to accept a blood draw for Ms. Mueller, even though Ms. Mueller protested. And that's what's in the record. Does there need to be consent for a medical blood draw? I mean, you have subsequent blood draw here. And whether or not that subsequent blood draw comes in, whether or not she didn't give consent to that, if we find that the medical blood draw was valid, that there's no issue with the medical blood draw. The subsequent blood draw that perhaps there was no consent for, and the police instructed or somehow it had state involvement, does it matter then whether or not the second one comes in if the first one did? I mean, isn't that kind of cumulative? Well, I would argue the first doesn't come either because there's no voluntary consent for that. I guess my question is, if the first does come in, do we even need to worry about the subsequent one? Well, it could have impacted the decision making of the court because under the harmless error test, because what the judge relied on in finding the defendant guilty under count two was three blood draws. And if we exclude two blood draws and the state has to prove that the error in admitting that blood draw was harmless beyond a reasonable doubt, then I don't think the state would be able to meet that standard. But more importantly to my argument is that I don't think any of the draws were admissible because the first one was involuntary as well because she was basically forced to go into the ambulance to the hospital. She didn't want to go. It was a low impact crash. She didn't want to go. She wasn't injured badly. The state has the burden to prove that was voluntary. There's just no voluntary consent. Your time is up. Justice Burkett, do you have any questions? One question regarding harmless error. The defendant admitted she had been drinking. She didn't know what day of the week it was. She was stumbling. She needed assistance to the ambulance. Even if the blood draws were excluded, where's the reasonable probability that the outcome of the trial may have been different? It was obvious that she was highly intoxicated. I think the key fact to answer that question lies in the trial court's decision to merge the convictions on count one and count three into count two. So count two is the only conviction before the court. And that conviction was for DUI with a blood alcohol level of in excess of .08. And for that conviction, which is the only one that stands, the results of the blood draw are absolutely critical. Because without that, the state cannot prove the defendant guilty of count two. And I think the state's argument revolves around trying to prove that the evidence is to count one and three, but those don't exist anymore. We're only dealing with count two, which is .08. Would the punishment have been any different? I'm sorry? Would the punishment have been any different? And the punishment would have been different, too, because, you know, under count two, we have an eight-year sentence. So we don't know what the judge would have done had he convicted under one or three. But those are merged into two. Those are six DUI, regardless of whether it's a one or a two, regardless of whether it's based on blood or just evidence of intoxication. It doesn't matter, does it? Those are six. It does, because count two is the only conviction we're dealing with, and that means an alcohol level above .08. And in order to gain a conviction on that count, we have to have the blood testing results. Without that, the state cannot prove its case. So it's certainly not harmless error under count two, which is the only conviction before the court, because the trial judge decided to merge three and one into two. Justice Shostak, do you have any other questions? Thank you. Mr. Levin, you'll have an opportunity to make rebuttal. Thank you. Thank you. Ms. Martin, you may proceed. Thank you. Good morning, Your Honors. My name is Leslie Martin, and I appear before this court today on behalf of the state in this case. Where a defendant sought the suppression of two blood test results on Fourth Amendment grounds, it was defendant's burden to show that an illegal Fourth Amendment search occurred. However, I will provide two reasons why defendant failed to meet that burden. First, as Your Honors have already noticed, the first blood test was performed by private actors, and there was no state action. And secondly, because the second blood test was performed after defendant provided the officer with her consent. Where only one blood test was necessary to support defendant's conviction on count two, the state provided two blood test results showing a blood alcohol level above the legal limit. And therefore, the state is requesting that this court affirm the findings and judgment of the trial court. Now, in case the timeline of events has not already been made clear up until this point, I'd like to briefly provide a timeline for Your Honors. At 7.54 p.m., the officers were dispatched to the vehicle accident. There was testimony that there was airbag deployment and moderate damage to both vehicles. Defendant was described as unsteady, that she spoke with slurred speech, that there was a heavy scent of alcohol around her, and that she exhibited signs of confusion. She was asked to come to the ambulance for further treatment at that time, and she did not refuse treatment, but actually asked for assistance in getting into the vehicle. At 8.25 p.m., she arrives at the hospital. At 8.26 p.m., the doctor ordered two blood tests. Only the first of those blood tests was submitted into evidence. That blood test was completed at 8.32 p.m., and it returned a BAC of .374. Then at 9.14 p.m., after defendant was asked by the officer for her consent, she gave the consent, and another blood test was performed, and the result was .322. Now, addressing the issue of the first blood draw done, it is the state's position that this was not an illegal Fourth Amendment violation because there was no state action, only private action. To implicate the Fourth Amendment, there must either be state action or action from a private actor that can be deemed to have behaved as an instrument of the state. And where that determination is made according to the circumstances of the case, there's nothing about the circumstances here to support that there was state action. Defendant was taken to a private hospital. She was treated by doctors and nurses that behaved according to their typical emergency room procedures when finding out that someone's being brought in from a car accident where there's been airbag deployment. And the doctor was even asked during the suppression hearing whether there was any sort of police involvement, whether he was asked by the police to order the tests, and he said no. Only that he believed that defendant may have suffered some sort of head injury, and he needed to know her blood alcohol level in order to be able to better interpret the tests. Now, while Defense Counsel has cited cases in their brief, like Gibson and Kowalski, to support that there was state action in this instance, both of those cases are distinguishable and therefore not instructive. First of all, in Gibson and Kowalski, there were completely different types of actions. Gibson involved the search of, I believe, a trunk. Kowalski, the search of a defendant's pockets. But more importantly, in both of those cases, it was a police officer conducting the search. There was no question about state action in either of those cases. How about the case that he heavily relies upon is Skinner. How do you distinguish Skinner? Yes, Your Honor. I am aware of Defense Counsel's reliance on Skinner, and it's not instructive in this case. Firstly, in Skinner, there was a regulation by a state actor which mandated that a private actor do something that they typically do not do, which is test their employees. Whereas in this case, we have hospital doctors and nurses doing what they do every day, test patients and figure out what is the best course in being able to treat them. And that doesn't amount to state action. It wasn't done for the purpose of aiding the state at all. It was done for the purpose of treating the patient. That's what the doctor testified to during the hearing. And that's the truth. That's the facts. Also in Skinner, ultimately, while the court did find that there was state action, it ultimately ruled that there was no Fourth Amendment violation because of a completely different part of the Fourth Amendment doctrine, which is the special needs exception. So that case concerned a completely different issue, which is not even in dispute in this case. I'd like to also draw this court's attention, as was mentioned earlier, that there are several cases cited in the state's brief, such as Wuchart, Poncar, Yant, DeRue and Brooks that all support and establish that there's no Fourth Amendment violation when you have doctors and nurses doing what they typically do and treating a patient where they take the patient's blood, but it's done for the purposes of treating a patient, not to aid the state in any way. Now, as for... Also, I have a question. Yes. Mr. Levin suggested that the other counts were immaterial. My recollection was they were merged by the trial court. What is your response to his claim that they are no longer relevant for purposes of this appeal? Your Honor, in the event that this court finds that both test results, either from the first blood test or the second, were error, which I've already explained why the first blood test was not, and I will later explain why the second wasn't. The other counts are still relevant under the harmless error doctrine, because where defendant was found guilty on all three counts, the fact that there was other evidence presented to the trial court to support defendant's conviction on those counts means that even if it was error to have admitted the blood test results, it was harmless error because defendant was also found guilty of those counts. The other counts are still relevant under the harmless error doctrine, because where defendant was found guilty on all three counts, the fact that there was other evidence presented to the trial court to support defendant's conviction on those counts means that even if it was error to have admitted the blood test results, it was harmless error because defendant was also found guilty on those counts. Before, I just want to also make sure I mentioned the points that are important for analysis of the second blood test. So as has already been mentioned, while only one test result showing a BAC above 0.08 was necessary to support defendant's conviction on count two, there was also the evidence admitted from the second blood test. Now, do you admit that the second blood test had state actors involved? Yes, Your Honor. That's also consistent with Nurse Palin's testimony that I know defense counsel cited. She was speaking about the second blood test and not the first. But as Your Honors are well aware that there is an exception to the Fourth Amendment where a search is done with consent, and that is what occurred in this case. Now, there's never been any evidence or argument presented by the defense that defendant never consented to the blood test. And also the trial court found in its memorandum of decision that this issue was conceded by the defense. So while it was defendant's burden in this case to establish a prima facie case, the burden never shifted to the state on even on the issue of consent. Let me ask you a quick question, and I think this is what the defendant was trying to say. There is a medical test, so you're saying, well, the Fourth Amendment doesn't apply because state actors weren't involved in that medical test. So under 11501.4-1, it says that the results shall be disclosed upon request. Does that take it out of the medical and put it into a state actor? No, Your Honor, it does not, because one important distinction that needs to be made is that it matters what is the reason for the test being performed. In our case, the doctors did not perform this test because they were interested in aiding the state in any way. They did it because they're interested and their main focus is on treating the patient. And the statute also says that it should be it shall be reported, but upon request. So there's nothing about, you know, what is typically happening in the course of regular hospital procedures. That means that state action had occurred. In this case, only one test result showing a blood alcohol content above 0.08 was necessary to support defendant's conviction for aggravated driving with an alcohol concentration of 0.08. And the state provided two results showing blood levels above the legal limit. The first test showing a result of 0.374 was done exclusively by private actors. And the second showing a result of 0.322 was done after defendant gave her consent. Where there was no state action in the first instance and there was consent in the other, defendant failed to meet their burden to establish a Fourth Amendment violation. Alternatively, even if the omission of both test results was error, it was harmless error, considering that defendant also was found guilty of aggravated driving under the influence of alcohol and other evidence was presented to support those counts. Therefore, the state requested this court affirm the findings and judgment of the trial court. And I will reserve the remainder of my time for any additional questions from the panel. Thank you. Ms. Martin, before the passage of 11501.1, police officers will be required to get a search warrant for hospital blood because it's protected by medical privilege, correct? I'm sorry, Your Honor, I missed the latter part of your question. I heard the part about the search warrant. Relevant statute here, police officers will need to get a search warrant in order to get hospital blood because the results were protected by medical privilege, correct? Your Honor, I'm not familiar with the history of the statute in that regard. But if the court would prefer, I am certainly willing to follow up with supplemental briefing. Follow me. If that is the history of the statute, that before this passage of this law, police officers need to get a search warrant. Counsel's argument is that 11501.4 removed the impediment for police officers. They could get blood in any case, even where they didn't have probable cause. All they have to do is request the blood. Isn't that akin to Skinner, where the government removed the impediments to police officers and encouraged blood tests? Well, Your Honor, I would disagree because, once again, in Skinner, you have basically an instance where an employer is being asked to do something that they typically don't do, which is something that's very distinct about this instance. We have a hospital doing something that society expects them to do in the interest of treating their patients. And if we were to say that just by nature of drawing a person's blood and turning it over to the state means that a Fourth Amendment violation occurs, that means that there's Fourth Amendment violations happening all the time because it's not just hospitals that are drawing blood. There's lots of different entities that draw blood. And without any sort of state action occurring, there's no Fourth Amendment violation. By the same token, wasn't the passage of 11501.4, wouldn't that meet the special needs provision that's addressed in Alvarez? If there was a need and the General Assembly passed this law to encourage hospitals to release the results of blood tests on request? Your Honor, I suspect that there may be a case out there that supports that there's a special needs exception. But as I cited in the state's brief, I'm not even sure most courts even get to that point because where they find that there's no state action in the first place, we don't even get to the point of citing the special needs exception. I have one question. I know you're saying that the second test isn't that relevant, but you say that there was consent. If the warning was improper that was given in order to receive the consent, if that warning was improper, which was alluded to in the trial court, then isn't the consent not valid? Yes, Your Honor, the state did concede that an improper warning was given to the defendant. However, as also cited in the state's brief, the remedy for an improper warning is not the suppression of evidence, but it's to rescind the suspension of the defendant's license. So even in that instance, the results are still properly admitted. Okay, thank you. I have nothing further, Justice McLaren. Thank you, Justice Burkett. Thank you. Thank you, Ms. Martin. Mr. Levin, you have five minutes for rebuttal. Yes, thank you, Your Honor. So under the McNeely case, U.S. Supreme Court decision, a warrant is required. I don't think the special needs doctrine applies. The state didn't raise it in their brief. So there is a forfeiture, but McNeely does cover that issue. On the issue of harmless error, I don't believe the state addressed the fact that the counts one and three were merged into count two, and that's really all we have at play in this case. I think the state mentioned during its argument that there was state actions to the second test. So that test should be suppressed under the state's argument, and that would affect the outcome in this case as well. Now, as to the first test, I believe that that should be suppressed as well, because under the hotel. Under the first, talking about the first test, the state relies on the Walker case, which is a lot of the facts are very similar to the facts that we have here. How do you distinguish that case? Well, in that case, there are a lot of distinguishing factors. That case did not discuss Skinner. That case did not discuss Gil. There was no agency relationship with the government whatsoever. And in fact, it seemed like the defendant was coming close to conceding that there was no agency relationship. And here, the facts are much different because we have nurse Palin stating in his testimony that the police requested the results of the blood testing. They didn't do that in Walker? Weren't the test results taken and then they were requested? I didn't see any argument on that at all. I didn't see it seemed like it was really pretty clear cut that there's no agency relationship. And I don't think the defendant vigorously argued that there's any kind of state action in that case. And the facts here are significantly different because the analysis is different, because in this case we rely on Skinner, which wasn't addressed in the Walker case. And as I said, with the Walker case, a big reason for its decision was its reliance on three out-of-state cases, Perley, Harvey and Jenkins. But those cases are a lot different from this case because those cases did not involve an analysis of the state action issue. They involved an analysis of whether an expectation of privacy was violated. And they were decided without the benefit of the U.S. Supreme Court decision in McNeely. So there is a question. Mr. Levin, wasn't the time to make these arguments? Shouldn't that have been done in a reply brief? Well, I believe I could address that in the in the oral argument, the reply brief. Why didn't you file a reply brief addressing Walker? Well, I would request the opportunity to address it if the court wants me to file a supplemental brief, I would be more than happy to do it. I will do that. I will request from the court leave to do that. But I believe that a lot of the issues were addressed in my opening briefing could have been have been addressed in the oral argument. But if I was in error in that assessment, I would request leave to file supplemental brief to address those cases. If your honor wishes me to do some. But in oral argument, I think it's very plain that Walker, Pearly and Hardy did not involve state action at all. They involve the expectation of privacy issue. And so those cases are in that case. Didn't the state didn't the court take a look at eleven five or one point four, finding that there's no Fourth Amendment violation with respect to the medical testing? And there is no Fourth Amendment violation if the test results are disclosed. Isn't that an important part of the case? No, I don't think the court addressed. I think they addressed it as a factual matter that the defendant really didn't argue that there was any participation encouragement from the state to to do any testing. And the four point one was mentioned very indirectly. I think it was like one single sentence. The court addressed four and four point one. The court addressed four in some depth of four point one. The court did not address whether that should be whether four point one as opposed to four four point one is a factor among many, as I have argued as to why their state action. The court Walker just didn't address that issue. So and I would like that clearly that there was no no state action. Correct. I got caught off a little bit. I'm sorry. We said in Walker that there was no state action. Analogous facts. Correct. Blood draw was at 826 p.m. before the police even arrived at the hospital. Right. Yes, but the, the system is imbued as a totality of the circumstances regarding, not just the statute. But look, Dr. La Chica's testimony nurse Palin's testimony. All those facts combined together. Show that there was participation and encouragement from the police and alluding to the Skinner case in particular because this has come up I want to make a point that the Skinner case held quote the fact that the government is not compelled. A private party to perform a search does not by itself established that the search is a private one. That's what the court holds one before the passage of 11501.4 hospitals were taking blood doing blood tests on patients with head injuries. Correct. I caught most of that they were doing the blood blood draw. 1.4 Yes. Yes. Thank you. That's the shots that you have any other questions. I have a question or two. Mr Levin, assuming that we suppress the two draws. What happens with the other counts. The count one and the count three well they've been merged into count two, according to the trial court count two is what's at issue here. So I did you make any argument about whether or not accounts. The other accounts would have been not beyond a reasonable doubt, and therefore they should have been reversed as well. I made an argument on count two. I don't believe I made an argument on count one and count three, and the state has addressed this issue at all so I believe they forfeited it. But under count. Okay, that's a novel approach. They forfeited the failure to respond to a non statement. Please, they have the burden of prove that an error is harmless beyond a reasonable doubt so the burden is on them to make the argument. And they didn't make any argument and I don't think they addressed it today but my argument was, even though I'm not required to raise the issue, I raised it anyways, on my own. And I argued because the trial court merged one and three into to that to would be the relevant conviction because one and three are no longer on the table anymore we just have to. Is there any authority for that position is it doesn't record, I don't seem to recollect that that argument my understanding is, if there are three convictions. The fact that to merge in to one of the three that the defendant must attack all three, and they, the defendant must first start out with attacking the conviction that sentence was imposed upon, and then add that if that fails and they also must fail because of and then explain why. Well, I think another way. Um, I, I didn't cite authority because the state didn't make that argument, Your Honor. But the issue is the authority that I'm relying on is whether the errors harmless beyond a reasonable doubt of the state has the burden on that. And the. It's not harmless because the trial judge decided to sentence this Mueller to eight years, based on count to. And the evidence is certainly not harmless is to count to. So, the sentence of eight years as a material factor. In this issue, she was prejudiced because of the sentence. And the judge. When a two counts are merged into one count. The two counts that are merged are no are in other are subsumed or, or are incorporated into the one conviction the count to. So those two convictions under one and three are no longer relevant and the state hasn't rebutted that in the brief or today in oral argument. My recollection is Justice Burkett wrote a case where this issue occurred, where the question was whether or not a percentage of blood violation. If it was reversed, would also adversely affect the other conviction on DUI based upon incapacity and not based upon blood. Am I correct Justice Burkett. I believe you are. I haven't seen any financial authority on any basis for the record, in fact, you can find the fence, or you can make any order. That is, the chocolate. Mr. We can make any board with the chocolate. Well, there seems like I listened very carefully to the best of my ability and seems like there are two elements here one is incapacity as the court noted, and the other element is the level, the blood alcohol level. So the state has to meet both elements. And as to the second element. Without the blood draw results without the numbers that cannot possibly establish the second element. So the, the suppressed evidence does make a difference. It can't be harmless because they can't prove that she had a blood alcohol level above point 808 without those results. And I don't recall the case either and I try to keep track of everything pretty well and I'm at a loss. But, um, but, um, I, again, if the state pointed out a case, I would have had an opportunity to research and address it but they didn't. So I'm at a little disadvantage because of that, but the state was at a disadvantage because you argue that was prepared to address Skinner but you didn't file a library. I, I'm able to address it now and if I recall correctly, and the corrective court could correct me if I'm wrong. During the state's oral argument today. The, the state made a argument but I don't think they addressed the principal issue I raised, which is count one and count three, by virtue of what the trial court did merged it into count two and enter the sentence on count to only. So therefore, based on the record itself. I would argue the state has not sustained their burden to prove harmless error beyond a reasonable balance their burden not mine. And they didn't sustain the burden I could have been silent completely in my opening brief. Does that mean it was back for retrial on all counts or just on the second count, or just on the first and third count. Well, the state would have to make an argument on it I would make the argument that the count one and count three are subsumed within and are merged into into count two. So that would be an argument to be made before the trial judge. But at this point, the issue is whether to suppress the evidence in order reversal. So I would argue that I would request that the court do that that that is an issue that the state and the defense could address on a remand. But I don't think that's an issue that court needs to address right now as to whether or not suppression is warranted and whether the error was harmless beyond a reasonable doubt because the state did not prove that. Therefore, reversal would request that reversal will be made, and that that issue can be addressed as trial court level on remand. Any other questions. Thank you, sir. Your time has expired, and we have no further questions, we will take the case under advisement and render a disposition and have time. Mr. Clerk, you may close out the proceedings. Thank you. Thank you.